IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| MELISSA PHILLIPS, | ) | CASE NO. 4:11-CV-1952 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | KENNETH S. McHARGH |
| | ) | |
| COMMISSIONER OF | ) | |
| SOCIAL SECURITY, | ) | **MEMORANDUM OPINION & ORDER** |
| | ) | |
| Defendant. | ) | |

This case is before the Magistrate Judge pursuant to consent of the parties (Doc. 17). The issue before the undersigned is whether the final decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff Melissa Phillips' application for Supplemental Security Income benefits, under Title XVI of the Social Security Act, 42 U.S.C. §1381 *et seq.*, on behalf of her child, D.P., is supported by substantial evidence and, therefore, conclusive.

For the reasons set forth below, the Court VACATES the decision of the Commissioner and REMANDS the case back to the Social Security Administration.

I. PROCEDURAL HISTORY

Plaintiff, Melissa Phillips ("Plaintiff" or "Phillips"), on behalf of her child, D.P., protectively applied for Supplemental Security Income benefits on August 8, 2007, alleging D.P. became disabled on this date. (Tr. 38, 43). Plaintiff alleged D.P. was disabled due to suffering from attention deficit hyperactivity disorder ("ADHD"), learning disabilities, a mood disorder and behavioral problems. (Tr. 118). The Social Security Administration denied Plaintiff's application for benefits initially and upon reconsideration. (Tr. 38-39). Thereafter, Plaintiff

requested a hearing before an administrative law judge to contest the denial of her application. (Tr. 65). The administration granted Phillips' request and scheduled a hearing. (Tr. 66-67).

On April 29, 2009, Administrative Law Judge John Porter (the "ALJ") convened a hearing in Mars, Pennsylvania to evaluate Plaintiff's application.[1] (Tr. 20-37, 43). During the hearing, the ALJ only heard testimony from Plaintiff. (Tr. 20-37). Near the conclusion of the proceeding, the ALJ advised Plaintiff and counsel that progress notes from D.P.'s treating physician did not appear to align with the doctor's later opinion showing the child suffered from a number of marked limitations. (Tr. 32). Instead, the ALJ noted that the doctor's progress notes tended to show that the child improved with treatment. (*Id.*) In addition, the ALJ highlighted that the doctor's latter report did not indicate how long D.P. had suffered from these marked restrictions. Therefore, the ALJ agreed to hold the record open for 20 days in order to allow Plaintiff to get clarification from the doctor regarding the apparent contradictions between his progress notes and his later findings, to provide more recent treatment notes, and to explain how long D.P.'s impairments had persisted at a marked level. (Tr. 32-33).

The ALJ explained that if Plaintiff failed to submit such evidence, he would base his decision on the evidence in the record, and that he could choose to treat Plaintiff's failure as a reflection that the doctor believed his treatment notes more accurately reflected the child's degree of limitation. (Tr. 33). The ALJ stressed that the burden was on Plaintiff to produce these documents. (*Id.*). Additionally, the ALJ requested Plaintiff to supply a report from D.P.'s current teacher evaluating D.P.'s limitations in the classroom. (Tr. 33-36). Subsequently,

---

[1] The ALJ's hearing decision indicates the hearing took place in Mars, Pennsylvania, but the transcript of the proceeding states it was conducted at an unnamed location in Ohio. *Compare* (Tr. 42) *and* (Tr. 20, 22).

2

Plaintiff provided the ALJ with a letter from D.P.'s doctor and an evaluation from D.P.'s teacher.[2] (Tr. 285, 173-81).

On July 30, 2009, the ALJ issued an unfavorable decision denying Plaintiff's application for benefits. (Tr. 43-57). Plaintiff sought review of this decision from the Appeals Council, (Tr. 17-18), but unfortunately for Plaintiff, it denied her request thereby making the ALJ's decision the final decision of the Commissioner. (Tr. 1-3). Plaintiff now seeks judicial review of the ALJ's decision. Judicial review is proper pursuant to 42 U.S.C. § 405(g).

## II. STANDARD FOR CHILDHOOD SSI CASES

A child under age eighteen will be considered disabled if he/she has a "medically determinable physical or mental impairment, which results in marked and severe functional limitations." 42 U.S.C. § 1382c(a)(3)(C)(i). Childhood disability claims involve a three-step process evaluating whether the child claimant is disabled. 20 C.F.R. § 416.924. First, the ALJ must determine whether the child claimant is working. If not, at step two the ALJ must decide whether the child claimant has a severe mental or physical impairment Third, the ALJ must consider whether the claimant's impairment(s) meet or equal a listing under 20 C.F.R. Part 404, Subpart P, Appendix 1. An impairment can equal the listings medically or functionally. 20 C.F.R. § 416.924.

A child claimant medically equals a listing when the child's impairment is "at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. § 416.926(a). Yet, in order to medically equal a listing, the child's impairment(s) must meet all of the specified medical criteria. "An impairment that manifests only some of those criteria, no matter how severely, does not qualify." Sullivan v. Zebley, 493 U.S. 521, 530-32 (1990).

---

[2] Although the ALJ discussed the teacher evaluation in his written opinion, (Tr. 51), the decision later denies having received such evidence. (Tr. 52).

A child claimant will also be deemed disabled when he or she functionally equals the listings. The regulations provide six domains that an ALJ must consider when determining whether a child functionally equals the listings. These domains include:

(1) Acquiring and using information;

(2) Attending and completing tasks;

(3) Interacting and relating with others;

(4) Moving about and manipulating objects;

(5) Caring for yourself; and,

(6) Health and physical well-being.

20 C.F.R. § 416.926a(b)(1). In order to establish functional equivalency to the listings, the claimant must exhibit an extreme limitation in at least one domain, or a marked impairment in two domains.  20 C.F.R. § 416.926a(d).

> The regulations define "marked" and "extreme" impairments:
>
> We will find that you have a "marked" limitation in a domain when your impairment(s) interferes seriously with your ability to independently initiate, sustain, or complete activities...[it] also means a limitation that is "more than moderate" but "less than extreme." It is the equivalent of the functioning we would expect to find on standardized testing with scores that are at least two, but less than three, standard deviations below the mean.

20 C.F.R. § 416.926a(e)(2)(i).

> We will find that you have an "extreme" limitation in a domain when your impairment(s) interferes very seriously with your ability to independently initiate, sustain, or complete activities...[it] also means a limitation that is "more than marked." "Extreme" limitation is the rating we give to the worst limitations. However, "extreme limitation" does not necessarily mean a total lack or loss of ability to function. It is the equivalent of the functioning we would expect to find on standardized testing scores that are at least three standard deviations below the mean.

20 C.F.R. § 416.926a(e)(3)(i).

4

III. STANDARD OF REVIEW

Judicial review of the Commissioner's benefits decision is limited to a determination of whether, based on the record as a whole, the Commissioner's decision is supported by substantial evidence and whether, in making that decision, the Commissioner employed the proper legal standards. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "Substantial evidence" has been defined by the Sixth Circuit as more than a scintilla of evidence, but less than a preponderance of the evidence. *See Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981). Thus, if a reasonable mind could accept the record evidence as adequate support for the Commissioner's final benefits determination, then that determination must be affirmed. *Id.* While the Court has discretion to consider the entire record, this Court does not determine whether issues of fact in dispute would be decided differently, or if substantial evidence also supports the opposite conclusion. The Commissioner's decision, if supported by substantial evidence, must stand. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983).

This Court may not try the case de novo, resolve conflicts in the evidence, or decide questions of credibility. *See Garner*, 745 F.2d at 387. However, it may examine all evidence in the record in making its decision, regardless of whether such evidence was cited in the Commissioner's final decision. *See Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989).

IV. ANALYSIS

Plaintiff asserts two assignments of error challenging the ALJ's decision. First, Phillips argues the ALJ improperly assessed the opinion of D.P.'s treating psychiatrist, Dr. Krishna Devulapalli, in violation of the treating physician rule. Second, Phillips maintains the ALJ failed

5

to adhere to the governing regulations and rules when evaluating the credibility of her statements regarding D.P.'s condition. Because Plaintiff's second objection is well-taken, the Court will address it first.

### A. Plaintiff's Credibility

Determinations regarding the credibility of witnesses are the prerogative of the ALJ. *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007). This is so because the ALJ has the exclusive opportunity to observe the demeanor and disposition of witnesses during the hearing process. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247-48 (6th Cir. 2007). Accordingly, the ALJ's credibility determinations are entitled to great weight and deference. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). However, the ALJ's credibility findings must be reasonable and supported by the evidence of record. *Rogers*, 486 F.3d at 249. Social Security Ruling 96-7p states:

> The finding on the credibility of the individual's statements cannot be based on an intangible or intuitive notion about an individual's credibility. The reasons for the credibility finding must be grounded in the evidence and articulated in the determination or decision. It is not sufficient to make a conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible." It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms. The determination or decision must contain *specific reasons* for the finding on credibility, supported by the evidence in the case record, and must be *sufficiently specific to make clear to the individual and to any subsequent reviewers the weight* the adjudicator gave to the individual's statements *and the reasons for that weight*.

1996 WL 374186, at *4 (emphasis added). Thus, blanket assertions indicating the plaintiff is not credible will not satisfy the standards established by this rule. *Rogers*, 486 F.3d at 248.

Because the instant case involved a claim for child disability benefits, Plaintiff testified at the hearing on behalf of her child, D.P., who was only 12 years old at the time. In such cases, "the ALJ must make specific findings concerning the credibility of the parent's testimony, just as

6

he would if the child were testifying." *Hickman ex rel. M.A.H. v. Astrue*, 728 F. Supp. 2d 168, 181 (N.D.N.Y. 2010) (citing *Jefferson v. Barnhart*, 64 F. App'x 136, 140 (10th Cir. 2003)). In this case, Phillips testified that Dr. Devulapalli's treatment notes did not accurately reflect D.P.'s level of functioning because D.P. gave her doctor inaccurate answers in response to his questions about her condition because she was in denial. (Tr. 24). For example, Plaintiff noted that although D.P. denied suffering from depression or mood swings to her doctor, the child was always depressed and had recently been kicked off the school bus for five days for fighting. (Tr. 24-26). Notably, Dr. Devulapalli seemed to agree with this conclusion because he later commented that D.P. "ha[d] a tendency to minimize her symptoms." (Tr. 285). Plaintiff also testified that D.P.'s prescription medications had been increased, and that she had violent outbursts where she would try to harm her brother, classmates and her dog. (*Id.*).

When comparing the ALJ's explanation of why he discredited Plaintiff's testimony with the requirements announced in Social Security Ruling 96-7p, the undersigned finds the ALJ's decision fell short. The ALJ's entire discussion of Plaintiff's credibility consisted of the following:

> At the hearing in this matter, the claimant's mother testified that the claimant continued to be depressed; that the claimant had an uncooperative [sic], and that the findings of Dr. Devulapalli and the claimant's teachers do not accurately reflect the claimant's true condition. The testimony of the claimant's mother is given little weight, especially to the extent that is [sic] in conflict with my findings herein regarding the claimant's limitations, and lack thereof, in the 6 domains (arguably, in attempting to discredit the findings of Dr. Devulapalli (especially as provided in his report of February 7, 2009), the claimant's mother can be found to have testified that, in essence, the claimant never (not even for 7 months) had any type of marked, mental limitation for purposes of evaluating the claimant's application under the 6 domains)) [sic].

(Tr. 51).

The explanation provided by the ALJ is troubling because it is both confusing and

7

conclusory. The undersigned finds the ALJ's reasoning to be confusing because it appears somewhat internally inconsistent. The ALJ began by noting that Phillips believed D.P.'s problems were not accurately reflected by her teachers or doctor, implying that Phillips felt D.P.'s problems were *more* severe than shown in the record. But, the end of the ALJ's discussion indicates that Phillips never believed that D.P. suffered from any marked limitation, not even for seven months, which is consistent with the ALJ's ultimate opinion, and begs the question of why the ALJ discounted Plaintiff's testimony at all. In the end, it is not clear to the undersigned why the ALJ noted these differences or how he resolved them.

Aside from this presumed inconsistency, the ALJ's decision to discredit Plaintiff's testimony because it was in conflict with his findings, is exactly the type of conclusory ruling prohibited by Social Security Ruling 96-7p. *See Brindisi ex rel. Brindisi v. Barnhart*, 315 F.3d 783, 787-88 (7th Cir. 2003). As the Seventh Circuit explained in *Brindisi*, such credibility findings "turn[] the credibility determination process on its head by finding statements that support the ruling credible and rejecting those statements that do not, rather than evaluating the [plaintiff's] credibility as an initial matter in order to come to a decision on the merits." *Id.* at 788. In other words, an ALJ may not bypass or neglect his duty to properly weigh a claimant's credibility as it is a pertinent factor in resolving the ultimate question of whether the claimant is disabled.

Here, the ALJ's comments are not sufficiently specific to explain why he chose to discredit Phillips or how he reached this decision as required by Social Security Ruling 96-7p. *See Olive v. Comm'r of Soc. Sec.*, No. 3:06-CV-1597, 2007 WL 5403416, at *9 (N.D.Ohio Sept. 19, 2007) (ALJ's statement that "the claimant's allegations regarding her limitations are not totally persuasive for the reasons in the body of the decision" was conclusory and did not

comport with administration's requirements). "It is an elemental principle of administrative law that agencies are bound to follow their own regulations." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 545 (6th Cir. 2004). Failure to do so is detrimental, particularly where the procedure "is intended to protect the interests of a party before the agency", regardless of whether it is likely the claimant will succeed on remand. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 662 (6th Cir. 2009) (quoting *id*.). As a consequence, remand is necessary so that the ALJ can supply a clear, adequate, and sufficiently specific explanation of his credibility determination. *See Ragan v. Barnhart*, 89 F. App'x 160, 164 (10th Cir. 2004) (remand necessary where ALJ's reasons for discrediting parent's testimony were conclusory and not linked to specific medical evidence); *see also Seaman v. Astrue*, No. 4:11-cv-988, 2012 WL 1466607, at *9-10 (N.D.Ohio Apr. 27, 2012) (remand proper where ALJ failed to explain how the claimant's daily activities proved she was not as limited as alleged).

B.  Treating Physician

Plaintiff also argues that the ALJ erroneously assessed the opinions of Dr. Krishna Devulapalli, D.P.'s treating psychiatrist. On or around February 7, 2009, Dr. Devulapalli completed a report assessing D.P.'s level of mental functioning in several areas. (Tr. 254). The report was titled, "Bipolar Disorder in Child Age 3 to 18". (*Id*.). The first section of the document asked Dr. Devulapalli to identify with a check mark whether D.P. suffered from any of the enumerated signs of bipolar disorder or related conditions. (*Id*.). The second portion asked Dr. Devulapalli to rate D.P.'s level of impairment in seven areas of mental functioning.[3] (*Id*.).

---

[3] The functions evaluated do not completely align with the six established domains recognized in child disability cases. *See* section II, *supra*. Dr. Devulapalli evaluated D.P. in the areas of 1) social functioning; 2) personal functioning, self-care; 3) deficiencies of concentration, persistence or pace; 4) acquiring and using information; 5) attending and completing tasks; 6) interacting and relating with others; and 7) caring for self. (Tr. 254-55). The first three areas

9

The doctor indicated D.P. suffered from marked limitations in four areas of functioning; moderate limitations in two areas; and mild restrictions in the final area evaluated. (*Id.*).

The ALJ discredited Dr. Devulapalli's findings for several reasons. First, the ALJ took issue with the form in which Dr. Devulapalli issued his opinion, indicating that marking checks on a questionnaire somehow lessened the validity of the findings contained within the report, particularly when the document was designed and prepared for litigating a disability claim. (Tr. 49). Next, the ALJ concluded that Dr. Devulapalli's progress notes over his course of treating D.P. did not support the marked limitations reflected in his report issued in February 2009. Additionally, the ALJ held that this report did not indicate whether the marked limitations noted therein had been present for at least 12 months – the requisite durational period to establish disability. Lastly, the ALJ found there was no evidence to support Dr. Devulapalli's diagnosis of D.P. with bipolar disorder.

It is well-established that an ALJ must give special attention to the findings of a claimant's treating sources. *Wilson*, 378 F.3d at 544. This doctrine, referred to as the "treating source rule" recognizes that physicians who have a long-standing relationship with an individual are best-equipped to provide a complete picture of the person's health and treatment history. *Id*; 20 C.F.R. § 416.927(c)(2).[4] Opinions from such physicians are entitled to controlling weight if the opinion is (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) "not inconsistent with the other substantial evidence in the case record." *Wilson*, 378 F.3d at 544. When a treating source's opinion is not given controlling weight, the

---

examined are not independently evaluated in child disability cases, and from the Court's review appear to be subsumed within one of the four remaining categories assessed by Dr. Devulapalli – all of which are recognized domains in the context of child disability cases.

[4] Effective March 26, 2012, section 416.927 of the Code of Federal Regulations was amended. Paragraph (d) was redesignated as paragraph (c). *See* 77 F.R. 10651-01, 2011 WL 7404303.

ALJ must consider the factors listed in 20 C.F.R. § 416.927(c)(2)-(6) to determine what weight the opinion should be afforded. Moreover, the regulations require the ALJ to provide "good reasons" for the weight ultimately assigned to the treating source's opinions. 20 C.F.R. § 416.927(c)(2).

Plaintiff argues that the reasons supplied by the ALJ for discounting Dr. Devulapalli's opinion do not justify the ALJ's rejection of the doctor's findings. The undersigned partially agrees. To the extent the ALJ discredited Dr. Devulapalli's opinion based upon it being rendered in a questionnaire-style format or in preparation for litigating Plaintiff's claim, the ALJ erred. The Court notes that in the realm of Social Security disability evaluation, the administration utilizes a number of questionnaire-styled forms in order for medical professionals to uniformly assess claimants' various levels of impairments. These documents are often used in rendering a decision on claimants' disability applications both at the administrative and judicial levels. The Commissioner did not identify, and the Court is unaware of, any unilateral rule or case law frowning upon the use of such reports purely based on their format or their intended use for litigation. Accordingly, this was not a "good reason" to discredit Dr. Devulapalli's findings.

Although Phillips argues that the ALJ exceeded the scope of his duty when he concluded that Dr. Devulapalli's progress notes did not support his marked findings pursuant to *Brewer v. Astrue*, No. 1:10-cv-1224, 2011 WL 2461341, at *5 (N.D.Ohio June 17, 2011), it is not necessary for the Court to decide that issue today. While an ALJ may not substitute his opinion for that of a medical professional, *Meece v. Barnhart*, 192 F. App'x 456, 465 (6th Cir. 2006), the ALJ is responsible for determining whether a treating source's opinion is entitled to controlling weight – a determination which inherently asks the ALJ to consider whether the physician's findings are medically supported. *See Wilson*, 378 F.3d at 544. However, regardless of whether

11

the ALJ erred in this respect or not, Dr. Devulapalli's report gave no indication of how long D.P. suffered from what he described as marked limitations.  Therefore, even if the ALJ had fully credited the doctor's findings, they do not necessarily show that D.P. suffered from disabling limitations for a period of 12 months or longer.

In fact, during the hearing, the ALJ raised this issue with Plaintiff and admonished Plaintiff to get additional evidence from the doctor regarding how long D.P.'s impairments persisted at such a severe level.  Yet, the ALJ indicated that Plaintiff failed to provide this information within the time allotted.  To be clear, though Plaintiff submitted additional correspondence from Dr. Devulapalli to the ALJ, (Tr. 51-52, 285), the letter did not address the longitudinal aspect of D.P.'s marked impairments.  Accordingly, it was reasonable for the ALJ to discount Dr. Devulapalli's opinion on this basis.  However, on the other hand, the ALJ wrongly concluded that there was *no* evidence to support Dr. Devulapalli's diagnosis of bipolar disorder as one of D.P.'s physicians had contemplated whether the child suffered from the condition, and another physician had actually diagnosed D.P. with the impairment.  (Tr. 259, 236).

Consequently, because the ALJ's credibility finding was faulty, and because it is at least *arguable* that the ALJ rejected Dr. Devulapalli's opinion for improper reasons (i.e. the format of Dr. Devulapalli's report and the ALJ's lay opinion regarding the meaning of Dr. Devulapalli's progress notes), out of an abundance of caution, the undersigned finds remand is proper.  However, Plaintiff's request for an immediate award of benefits is denied as she has not presented overwhelming proof of D.P.'s disability.  *Faucher v. Sec'y of Health & Human Servs., 17 F.3d 171, 176 (6th Cir. 1985)*.

## V.  DECISION

For the foregoing reasons, the Magistrate Judge finds that the decision of the Commissioner is not supported by substantial evidence.  Accordingly, the decision of the Commissioner is **VACATED** and the case is **REMANDED** for further proceedings consistent with this Memorandum Opinion and Order.

s/ Kenneth S. McHargh
Kenneth S. McHargh
United States Magistrate Judge

Date: January 30, 2013.